12-15-36 THOMPSON LICENSING SAS against the International Trade Commission, Mr. Czerny. May it please the Court. My name is Steve Czerny. I represent Thompson, the appellant. I'd like to begin with the Commission's finding of obviousness of the 063 patent with the Board's permission. The Commission found obviousness of the claims that were asserted against respondents based on a combination of two references that are technically incompatible and in a way that was not advanced by anybody, most notably the expert below. So we have a situation where the Commission took two references, combined them in a way that was not advanced below, which of course puts the patentee in the unenviable position that there was no way for the patentee to actually rebut the combination in the way the Commission did it, which is different than the way it was advanced below. In order to understand what the Commission did and why it was erroneous... They're certainly in the same field, aren't they? They're definitely in the same field in the sense of LCDs, although the two different references are vastly different and are technically incompatible. Doesn't Sugata disclose the invention except for the question of the timing of the rubbing? Sugata discloses all the elements except for the very important idea, which is at the heart of Crawford, which is the idea that when you're rubbing afterwards, what type of spacer... Afterwards. I'm sorry? Afterwards. Afterwards. And that's really the heart of Crawford. And what's interesting there is that neither Sugata or Tsubayama ever talk about that problem at all. So it's hard to comprehend how combining them is going to lead you to a solution. So it's not a matter where Sugata says nothing and Tsubayama talks about that problem. Is the problem that you state in the claim? Yes. Well, it's in the patent. The claim is the solution to the problem, which is you need spacers in order to keep the two substrates apart so that you can keep the gap substantially uniform. In the type of display, the monitor issue in this case, you have a situation where the substrate is partitioned. It's partitioned in a way that there's an active area and an inactive area. A good analogy is if you take a look at the window, the panes would be the active area through which light goes through. The inactive area would be the little wooden areas. And so what Crawford is dealing with is you need to put the spacers in a way that doesn't impinge on the area where the light comes through, but the spacers have to be strong enough to be able to resist rubbing afterward, which everybody agrees is a desirable outcome. Now, Sugata has spacers in the anisotropic shape, but Sugata never discusses, and it's admitted by everybody, never discusses the concept of what type of spacer would resist rubbing afterward. So there's many, many different types of spacers that exist. But is that in the claim? I'm sorry? Is that in the claim? You said what type of spacers? Yes. Spacers are in the claim separate from one another, and the spacing elements have been mechanically rubbed, and that's subiotic. And they have to be anisotropic. Yes. And so the reason they're anisotropic is because in a monitor such as Crawford is talking about, where you have that situation I described where you're trying to make sure the spacer doesn't impinge on the active area, you have to be strong enough to resist rubbing afterwards, you have a problem. And the claim language you just read is a solution to that problem, which is if you build something as Crawford describes, you now have something where you can have spacers that will resist rubbing afterwards, but that will not impinge upon the active area. So what's missing in these two references that is required by the claim? Well, what's missing is the idea of understanding that of the different types of spacers you pick, that an anisotropic spacer, in the context of a display where you have this inactive area. This is a composition claim, or a manufacture claim. Yes. And the purpose and the understanding aren't in the claim, the components are in the claim, and they're in the prior art, which are in the same field. So the components are what you do to solve the problem. So Sagata has everything except for what's in the claim of rubbing afterwards. Rubbing afterwards is in the claim, and so as a result, that's where the problem comes in. Now, Tsubiyama is totally different in many, many fundamental ways. Because Tsubiyama is a passive matrix display, there is no partitioning, so you don't have the issue of trying to fit. The whole thing is transparent, so you don't have to try to fit a spacer into the area. Most notably, when you take a look at Tsubiyama, figure 3B and 3A, 3A shows, and this was supported by what the Commission found, that you actually don't even have separate spacers. So unlike Sagata, unlike Crawford, where you're dealing with a very specific issue where you have these discrete little spacers that you're trying to fit into the area that's inactive, as 3A shows in Tsubiyama on page A17943, and as the Commission found and was not appealed, it's actually one whole spacer at the bottom with little fingers that point up. Because of that, and because you're not trying to keep the spacer out of the active area in Tsubiyama, nobody is worried about making a spacer that can resist rubbing afterwards. So even though you have rubbing afterwards in a totally different type of monitor that doesn't meet any of the other elements, you would never look to that if you had Sagata in hand. To solve the problem that Sagata still doesn't solve. So I have Sagata, which is in the same realm as Crawford. It's an active matrix display, it has an active area, an inactive area, it has discrete little spacers. What Sagata doesn't tell you is that you can rub afterwards. And rubbing afterwards is the whole key here. That's what Crawford was trying to solve. And that's why Crawford specifies that you have certain types of spacers that are in a certain area of this type of display, and that these anisotropic spacers solve this problem. And yes, the problem isn't identified in the claim, but the elements of the claim are what solve the problem. And everyone agrees Sagata doesn't have that. So then you take a look at Tsubiyama. We'll see if everyone agrees. Yeah. Okay. Thompson, let me read from the red brief. Sure. Thompson, this is page 41. Thompson attempts to fabricate a specific sequence out of this straightforward rubbing disclosure in Sagata, arguing that the mechanical rubbing in Sagata necessarily occurs prior to spacer formation because the asserted 063 patent itself allegedly explains that rubbing after spacer formation would easily destroy prior or post-spacers. Not only does Thompson misrepresent the disclosure of the 063 patent and so on. No, but the difference there is between they're making an argument that Thompson is alleging that Sagata actually says rub before. What the commission found and the position we have right now that we're taking at the appeal is that Sagata is silent, which is why the commission didn't find Sagata anticipates, and which is why they're not arguing anticipation based on Sagata anymore. So when I say we agree, we agree that there's no disclosure of rubbing afterwards. So when the commission's arguing at that point that we're urging a sequence, we're not urging that Sagata teaches before. We urge that at trial. But the reason there was no anticipation held was because the commission found that Sagata is silent. And if you're silent as to when the rubbing is occurring, then what's happening is that there's no idea there in Sagata of the concept of an anisotropic spacer as the type of spacer that can resist rubbing afterwards, which is why Sagata didn't anticipate. So then they look to Tsubayama. Doesn't column four, lines 45 to 50, talk about subsequent rubbing after spacers are formed? I'm not sure from which. Are you reading from Sagata or Tsubayama? The 225 patent Tsubayama, whom you say doesn't talk about subsequent rubbing. There's no doubt Tsubayama talks about subsequent rubbing. But because Tsubayama has, as I pointed out, a wholly different type of spacer where they're not discreet, which is called for by the claim, and the commission found that, and where they can go into the active area, Tsubayama is not confronting the problem. So yes, he is rubbing afterwards. But nobody would take a look at Sagata and say, I'll look at Tsubayama to fix the problems that might arise in Sagata or other active matrix types displays, because Tsubayama isn't facing that problem. So yes, there's rubbing afterwards. But what you're rubbing afterwards doesn't have the problem that Crawford has, or the problem that all the other types of matrixes had, where you had essentially to fit a discreet spacer into the inactive area. Because, as I pointed out in 3A, they're not discreet little spacers. These are one composite spacer. And so the reason why when, even though Tsubayama has on 3B, looks facially a little bit like the claim, it doesn't mean any other element to the claim. It's not, the spacer is not being kept out of the active area. The spacers are not separate. And so because Tsubayama is talking about something totally different, Tsubayama is not particularly, no one would look to Tsubayama because, for example, if you rub those spacers afterwards, you wouldn't make a difference of what shape you're talking about, because no one would be thinking that it would break off because it's one big composite, as opposed to the little spacers that in Tugada or Crawford have to fit into that area. So then we look to what's the evidence here. And the only evidence anyone points to is Dr. Lowe. But Dr. Lowe didn't rely upon Tsubayama for rubbing afterwards. How about the Fujitsu rejection? That's the other patent. That's the other patent. Okay. So if we go to the 674 patent, the anticipation there, what we have here is on Fujitsu, the patent requires the one element that's at issue here, was that five elements had to be in the same layer, according to Weisfield. The commission, the ALJ took a look at the one thing that was argued, which is figure one, and this is on page 60 of the commission's brief. There's a picture here. Okay. It's a top-down picture. The top-down picture doesn't show layers. No one disagrees in terms of the top-down pictures because you're looking down. There's no depth there. So the ALJ says this is admittedly ambiguous. The commission changed that and said, no, because there's cross-hatching throughout. We can see all five elements, and we see through logic and by the fact that Fujitsu was trying to save costs that they must be in there, except if you take a look at page 60 of the commission brief, which shows the cross-section of Fujitsu, which is actually sponge-showing layers, the cross-hatching goes across the layers. So what we have here is, at best, an ambiguous picture where the only thing that the commission relied upon was the consistency of the cross-hatching on figure one, which is a top-down view. But when you look at the figure that's meant to show layering, two of the components are not shown there. They say logically they must be there. And then when you look at cross-hatching, which is the whole of the basis for the anticipation, the cross-hatching goes across the layers, showing if they can't be the cross-hatching is sufficient to anticipate. So from my perspective, from Thompson's perspective, what we have here is a situation where the ALJ took a look at it. He said the picture was ambiguous. The commission took a look at it and said, well, there's cross-hatching on this top-down view. Therefore, they must be in the same layer. But you can see from the one picture that's meant to show layering, what's in what layer, that the cross-hatching goes across the layers. And so what we have is the commission now finding that this patent is anticipated based on nothing other than, I guess, an argument that somehow inherently cross-hatching means that the same layer, even though the picture of the layer shows that cross-hatching goes across the layers. If I may, Your Honor. We'll save the rest of your time, and we'll continue this discussion with the commission. Thank you, Mr. Cherney. Ms. Cherney. May it please the Court. Good morning, Your Honor. The commission correctly found no violation for at least two reasons. First, it was obvious to one skilled in the arts to combine Sugata and Tsubayama to arrive at the claimed invention of the 063 patent. And second, substantial evidence supports the commission's finding that the 674 patent is anticipated. For the 063 patent, Thompson does not dispute that each and every limitation, as construed by the commission, is found in the combination of Sugata and Tsubayama. And this is well supported by Dr. Loh's testimony. Dr. Loh also testified that one of ordinary skilled in the arts would look to both references because they have the same specific goal of forming spacers that would not disturb liquid crystal alignment and cause lack of uniformity. And this is the exact same goal as the 063 patent. So Thompson's argument now on appeal is that the commission had no basis to combine because although Dr. Loh testified to the combination of Sugata and Tsubayama, that he only testified to Tsubayama's rubbing direction. This argument is misleading because Dr. Loh testified in detail as to the scope and content of the Tsubayama prior art and he testified that not only does Tsubayama have rubbing direction, it discloses rubbing after spacer formation. In fact, his testimony shows that rubbing after spacer formation is commonly known in the prior art. And Thompson also argues that the references teach a way against this argument. It's misleading because it's based on the incorrect assumption that Sugata teaches rubbing prior to spacer formation. And this is their argument all along. And that's the only argument that their expert made is that their argument for non-obviousness is that it was because Sugata teaches prior to. But that's incorrect because Sugata at line 41 and column 4 of Sugata, they say that we apply a typical rubbing process. They do not specify whether it's before or after. And we know from Dr. Loh's testimony that a typical rubbing process in the prior art is rubbing after spacer formation. So one of ordinary skill in the art, looking at the teaching of Sugata, including the express teaching to apply a typical rubbing process, will look to the typical rubbing process disclosed in Tsubayama to arrive at the claimed dimension. This is a case where this is an application of a known technique to a piece of prior art that's ready for improvement. And turning to the 674 patent, I want to point out that the only issue here is whether Fujitsu discloses the claim limitation requiring the data line to be in the second metal layer. So if we're looking at independent claim 16, that particular limitation is stated at column 18, line 2 to 5. So if we're looking at Fujitsu, the only limitation at issue here is whether drain bus 9 connects to drain electrode 8. And that's the only issue here. And figure 1 expressly discloses this. Figure 1 shows drain bus 8, drain bus 9 directly connected to each other. It shows them directly depicted in a continuous and consistent shading. Dr. Hadalab testified that this continuous and consistent shading has a meaning to one of ordinary skill in the art, and that is that they are connected at the same metal layer. And by contrast, figure 1 shows other metal components from different metal layers that do not have this consistent shading. So if we look at figure 1, we have gate bus 2 and gate electrode 3. They are connected in a lack of shading because they are in metal layer 1. In addition, Dr. Hadalab testified that figure 1 expressly discloses contact holes where different components of different metal layers are connected. So if we look at the contact hole 15 disclosed in figure 1, that connects pixel electrode 10 of the third metal layer to the opposing electrode 13 of the second metal layer. And this is described in detail in the textual disclosure as well. However, in figure 1, 8 and 9 is showing continuous shading directly connected to each other, and Dr. Hadalab's testimony shows that that means they are in the same layer. It's interesting that Dr. Parsons, Thompson's expert, does not actually refute anything that Dr. Hadalab says about figure 1. His testimony was that, if we're looking at the text, he says that there's somehow a possibility that the strain bus 9 could be in another layer. He doesn't know which one, but he says the reason for that, he gave a vague statement, the reason for that is that, at the time of the 674 patent, it was advantageous to form different components from different metal layers. But that does not refute Dr. Hadalab's testimony that, even if we're just looking at the text, there's only three metal layers disclosed in Fujitsu. There's metal layers 25, 20, and 30, and that's stated clearly in paragraph 17, that's shown clearly in all the cross-sectional drawings, and we know from paragraph 15 that it cannot be in metal layer 1, it cannot be in metal layer 3, so even if Thompson were to characterize this as inherency, setting aside what's expressly disclosed in figure 1, the answer would be the same. The answer would be the same because it necessarily discloses that strain bus 9 is in the same metal layer as strain bus 8. And I want to briefly touch on Thompson's argument that the CMI modules infringe the 063 patent. Thompson advanced two theories here. They advanced a main infringement theory based on the main photospacers and a backup theory based on the sub-photospacers. However, they did not meet its burden under either one. For the main theory, they tried to rely on documents that were in Chinese that allegedly purportedly show the dimensions of the spacers. However, the judge excluded those documents for lack of translation and any accompanying expert testimony. So the only evidence that Thompson has to show infringement of the anisotropic limitation was a vague statement saying that some are anisotropic and some products are not, and that does not meet its burden. And also did not meet its burden for the sub-photospacers because they just do not maintain the uniformity of the spacers. What they do is they act as a stopper in the very acute circumstance where the user presses down the substrate, but then the cell gap is no longer uniform. And we respectfully request that the court affirm our finding of no violation. Thank you. Thank you, Ms. Chen. Mr. Haidt. May it please the court. My name is Warren Haidt, and I represent the Chi-Mei entities. I will be addressing two points very briefly, and then I will turn it over to A. Rhodes Counsel. I believe the commission has adequately addressed most of the issues that are on appeal. The two issues I will be addressing are the 674 patent and the anticipation determination, as well as Thompson's finding that Thompson failed to prove that any CMI product infringes the 063 patent. Again, I think the commission has done an effective job in arguing the issue of anticipation on the 674 patent, the Westfield patent. I just want to add one or two points to that. Regarding counsel's argument in his briefing on inherency, the commission's determination is not an inherency finding. An inherency finding would have to be a gap, something that is not disclosed by the reference that is asserted as anticipatory reference, and there would have to be a filling in of that gap based on expert evidence. In this instance, there is no gap. The Fujitsu discloses all of the elements of the 674 patent. The Finnegan case cited by Thompson related to a block, and the block was representative of something, and the question before the court in the Finnegan case was whether that block had non – I'm sorry. There were two types of ejection of electrons, and the question was whether it was one type of non-resident ejection versus resident ejection. And there was no disclosure in the Finnegan case whether the Finnegan disclosure was resident ejection versus non-resident ejection. So there had to be a filling in of that gap to find anticipation. That's not the case here. There is no gap that has to be filled in. The Fujitsu reference discloses structures, and these structures are understood by those skilled artists, and Dr. Hattles has testified as to what they do. Counsel for Thompson has focused on some shading, but they've really not analyzed the technology of the Fujitsu reference. It's not really gone over how the layers are formed and how the connections are made. If Thompson had gone through that detailed analysis, that detailed technical analysis, which the commission has done a very effective job on, they would say, there's where you're wrong. There's where the commission got it wrong. But Thompson doesn't do that. Thompson really has just a legal argument trying to change the rule. With respect to the issue of proof of whether CMI's products infringe the 063 patent, as the commission has said, Dr. West, this is Thompson's expert, came forward and used a representative product in an effort to prove infringement of the 063 patent by CMI's products. But on the stand, Dr. West admitted that this representative product does not infringe the 063 patent because it doesn't have anisotropic spacers. As a result, the commission found that Thompson had failed to tease out which products infringe and which don't. The other evidence that Thompson asserted to prove up infringement with respect to CMI's products were these product specifications. They were the only evidence in the case that described the width and the length dimensions that were necessary to prove anisotropocy. Under the court's construction, the width dimension had to be greater than the length dimension or the other way around. The length dimension had to be greater than the width dimension. Now that seems to be an easy analysis, but these spacers have different shapes. It's not just, you know, there are some polygons. So this analysis required a detailed analysis, and the only evidence that Thompson put forward were these product specifications. But all of these product specifications were excluded as unreliable. Your time's up, but let me ask you a quick question about the 674. Is the issue there as to whether the drain electrode, whether it's a single metal layer? The issue is to prove anticipation, the single metal layer would have to have all of the required elements, the second metal layer. Okay. And Fujitsu does disclose that as a commission properly found and substantial evidence supports. Okay. Thank you, Mr. Hite. Thank you. Mr. Goetz. Good morning, Your Honor. May it please the court, Larry Goetz for the AUO Intervenors. I'm going to touch on the O6-3 obviousness point and then briefly touch on the front surface limitation, which was the alternative grounds for affirmation with regard to Claim 11 of the O6-3 patent. The linchpin of Thompson's argument regarding the O6-3 obviousness point is its assertion, no less than five times in its brief, twice this morning, that there is no evidence, no evidence in the record from Dr. Lowe regarding the modification of Sagata in view of the spacer formation and rubbing sequence of subiella. They take the position that the sequence was never opined on with regard to Dr. Lowe. That's just flatly wrong, Your Honor, Your Honors. At A22275, paragraph 542 of Lowe's testimony, Lowe testified, quote, one of ordinary skill in the art would make Sagata's spacer members rectangular in shape and would choose a rubbing direction so that the spacers are rubbed along the long axis of the spacers as taught by Tsubiyama. That's an express teaching of the modification of Sagata in view of Tsubiyama and makes it clear the spacers are rubbed. Obviously, that's after spacer formation. This is exactly the evidence that was relied upon by the commission at A533 of its decision. And in the face of that evidence, there cannot be a submission that there's no substantial evidence of obviousness. It is just flat out substantial evidence, should be end of story. And that testimony is not addressed. And, in fact, to the contrary, we have Thompson indicating that there was no evidence, and that's just flatly wrong. With regard to front surface, again, this is an alternative grounds for affirmance with regard to Claim 11. What Thompson's counsel would have this court understand is that when I hold up my cell phone, this image on the front is the rear surface of the display cell. That's not common sense. That's not the common meaning. It's not the plain meaning. What AUO's construction was for front surface was that it's the surface that is facing the viewer. The commission adopted Thompson's construction. Under AUO's construction, it's undisputed that there's no infringement. Putting aside the common meaning, which I think is at variance with the commission and Thompson's construction, we have intrinsic evidence, which was regrettably not considered by the commission. The 652 application, which is filed by one of the co-inventors of the 063, Mr. Crawford, is incorporated by reference in the 063 patent. The 652 application at A17967 explains and describes the front substrate, the back and the rear substrate, and the front and rear surfaces exactly consistent with AUO's construction and at variance with the commission's construction. However, the commission did not address at all that intrinsic evidence. So we have common meaning and intrinsic evidence both supporting AUO's construction. Okay. Thank you, Your Honor. It really costed your time. These are very complex issues, very difficult, whether you have three minutes or more. I appreciate that, Your Honor. Thank you for your time. But we'll try and digest it from the brief. Thank you, Mr. Goss. If it may please the court, I'd like to begin with the rubbing direction issue. Now, I think what Mr. Goss said and what the commission said gets to the heart of the proof issue here. You heard Mr. Goss cite Dr. Lowe talking about rubbing direction of Tsubiyama. It's very important for the court to understand that there were two aspects. When the claims were construed, respondents argued that the claims had both a rubbing sequence limitation and they also had rubbing direction, even though there is a dependent claim, Claim 14, that adds a rubbing direction to it. The ALJ agreed with them initially, but the commission disagreed. So we now know that there is no rubbing direction aspect to the independent claims. There's only a rubbing sequence. Why is that important? Because they keep trying to conflate the two because that's all the evidence they have. So let's take a look at what Dr. Lowe actually said. My opinion is that by at least as early as 1995, it would have been obvious to one of ordinary skill in the art to perform the rubbing step in Tsugata by rubbing along the long axis of the rectangular or other anisotropically shaped spacers as taught by Tsubiyama, direction. Except for following Tsubiyama's teaching regarding the rubbing direction relative to the spacers, one of ordinary skill in the art would follow all the other teachings of Tsugata. Why is that important? They were arguing that Tsugata anticipated under our construction and was obvious under their construction, where there's a rubbing direction. But the commission adopted our construction and didn't adopt their construction. So they never actually argued Tsubiyama and Tsugata for the independent claims under our construction. It was only under their construction that they argued Tsugata plus Tsubiyama renders it obvious. Under our construction, they relied wholly on Tsugata as anticipatory. To listen to the commission, they almost make it sound like they found that Tsugata anticipated. But it didn't. Tsugata doesn't say anything at all about rubbing before rubbing after, which is the crux of Crawford. The whole point of Crawford is how are you going to get a spacer that can fit within that little area that will also resist rubbing? What type of shape? All the different shapes. Yes, people knew ahead of time that you could rub before or after. That's the problem that Crawford was dealing with. Not that people didn't know you could rub afterwards. It's what type of spacer, these discreet little spacers that fits within the inactive area that you would pick that can resist rubbing. Tsugata doesn't say it. And Tsubiyama rubs afterwards, but it doesn't meet any of the other elements. And it has a wholly different type of structure where you would never be worried about breakage because it's one unitary spacer. So Dr. Lowe, it could not be more explicit. You need to wrap it up. Okay. When it comes to Whitefield and the 674, as you heard from counsel, the only thing that they're relying on to say that all five elements are in the same layer is the cross-hatching. ALJ Rogers said that was ambiguous. The commission disagreed. But then when I showed Figure 3, which is the only thing that shows the layers, the cross-hatching goes through. You didn't hear anybody say anything about that because there is nothing to be said because the top-down picture is not trying to show layers. It's just trying to show elements, the cross-sections where the layers are shown. As for CMI's claim about some— Perhaps you didn't hear Judge Newman. Sorry? Perhaps you didn't hear Judge Newman. I have to wrap it up? I'm afraid time is up. I did hear Judge Newman, but I was trying to push the envelope. But thank you very much, Your Honors. Well, this is a case that needed more time than we've been able to allocate to it. We'll figure it out. But thank you very much, Your Honors. Thank you. The case is taken into submission.